UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JAMES NACHE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-04063-SLD-JEH |
| | ) |
| BNSF RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

ORDER

Plaintiff James Nache sued Defendant BNSF Railway Company ("BNSF") for allegedly violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654. *See generally* First Am. Compl. ("FAC"), ECF No. 13. Before the Court are BNSF's 12(b)(6) Motion to Dismiss Counts I, II, III & IV of Plaintiff's First Amended Complaint, ECF No. 14, and BNSF's Motion for Leave to File Its Reply in Support of Its 12(b)(6) Motion to Dismiss Counts I, II, III & IV of Plaintiff's First Amended Complaint, ECF No. 18. For the following reasons, BNSF's motion to dismiss is DENIED, and BNSF's motion for leave to file a reply is GRANTED.

BACKGROUND[1]

Nache was hired by BNSF on or around September 19, 2011, as a track maintenance laborer at BNSF's Galesburg, Illinois location. His duties included tasks like inspecting, repairing, and maintaining the railroad-track infrastructure. BNSF was aware that he had ulcerative colitis ("UC") when he was hired, and Nache had not received any disciplinary

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant]'s favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Unless otherwise noted, the alleged factual background is drawn from Nache's FAC. The Court also considers the exhibits which are attached to the complaint. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

1

reviews or writeups prior to the events in question. On or around January 1, 2022, he contracted "a severe and life threatening condition due to his disability, UC." FAC ¶ 24. He informed BNSF of this condition around this same time and was placed "on intermittent FMLA leave beginning on or around January 7, 2022 through January 24, 2022." *Id.* ¶ 26. He had a medical procedure scheduled for around the beginning of February 2022 to determine if he could return to work and provided documentation for the procedure—along with a request to continue his FMLA leave—to BNSF's Employer's Leave Administrator Kaitlyn Williams. At some point, Nache contracted COVID-19, delaying his procedure until about February 24, 2022. Nache kept in touch with Williams during his FMLA leave.

Sometime in or about March 2022, Nache received medical-test results and informed BNSF that he was cleared to return to work without restrictions. He received no response from BNSF until about April 1, 2022, when Williams called and emailed him requesting that he resign from BNSF. Nache wanted to keep working for BNSF, but BNSF ignored him, and he never heard from BNSF again. Nache complained to the Equal Employment Opportunity Commission. Charge of Discrimination, First Am. Compl. Ex. A, ECF No. 13 at 13–15. He received his right-to-sue notice on April 3, 2023. Dismissal and Notice of Rights, First Am. Compl. Ex. B, ECF No. 13 at 16–20. He then filed his first complaint in this Court. Compl. 1, ECF No. 1

The Court gave Nache leave to file the FAC. July 11, 2023 Text Order (Hawley, J.). The FAC contains five counts. Nache alleges that BNSF violated the ADA by: (I) discriminating against him based on disability; (II) failing to accommodate his disability; and (III) retaliating against him for requesting an accommodation. He alleges that BNSF violated the FMLA by: (IV) denying him the exercise of his FMLA rights; and (V) retaliating against him for exercising his FMLA rights.

BNSF filed a motion to dismiss all but Count V. Mot. Dismiss 1; Mem. Supp. Mot. Dismiss 1–2, ECF No. 15. Nache opposes the motion to dismiss in its entirety but alternatively asks for leave to amend if the Court finds that the FAC is deficient. Resp. Mot. Dismiss 1–2, ECF No. 17. BNSF filed a motion seeking leave to file a reply to Nache's response. Mot. Leave File Reply 1–2; *see also* Reply Mot. Dismiss, Mot. Leave File Reply Ex. A, ECF No. 18–1. Nache did not oppose the filing of the reply.

## DISCUSSION

### I. Reply

The Court generally requires leave of court to file replies, *see* Civil LR 7.1(B)(3), and such leave may be granted if the non-movant introduces "new and unexpected issues in his response" or if it would further "the interest of completeness." *Magnuson v. Exelon Corp.*, 658 F. Supp. 3d 652, 658 (C.D. Ill. 2023) (quotation marks omitted). BNSF's reply addresses three points: (1) whether Nache sufficiently pleads but-for causation between his UC and termination; (2) whether the FAC alleges that BNSF denied his accommodation; and (3) whether the FAC alleges that BNSF denied his rights under the FMLA. *See* Mot. Leave File Reply ¶ 9; Reply Mot. Dismiss 1–5.

The Court finds that Nache's response raised new issues with respect to whether he sufficiently alleges "suspicious timing" as the causal link required by the ADA, *see* Resp. Mot. Dismiss 8–10, and whether he alleges that BNSF granted his requested accommodation of additional FMLA leave for his procedure in February, *see, e.g., id.* at 11–12. The Court finds the reply addressing these issues is helpful to its disposition of the motion to dismiss, and leave is granted. *See Magnuson*, 658 F. Supp. 3d at 658.

II. **Motion to Dismiss**

    A. **Legal Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere 'labels and conclusions or a formulaic recitation of the elements of a cause of action'" are not sufficient to satisfy the plausibility standard. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). A court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

    B. **Analysis**

The Court takes up BNSF's arguments for dismissing Counts I, II, III, and IV in turn. BNSF argues that Count I—disability discrimination—should be dismissed because Nache fails to sufficiently plead that: (1) he was disabled, (2) he was a qualified individual, and (3) his disability was a but-for cause of his termination. Mem. Supp. Mot. Dismiss 3–8. It argues

4

Count II—failure to accommodate—fails because the FAC alleges that BNSF gave Nache his requested accommodation. *Id.* at 9–10. It argues Count III—ADA retaliation—should be dismissed because it is an impermissible repackaging of his failure-to-accommodate claim and because he fails to allege a causal link between his termination and any protected activity. *Id.* at 10–12. Finally, it argues that Count IV—FMLA interference and denial—should be dismissed because Nache alleges that he was able to take twelve weeks of FMLA leave, such that BNSF did not interfere with his rights under the FMLA. *Id.* at 12–13.

### 1. Count I: ADA Disability Discrimination

"To establish an ADA discrimination claim, [a plaintiff] must show that he: (1) was disabled within the meaning of the ADA; (2) was qualified to perform the essential functions of the relevant job either with or without reasonable accommodation; and (3) suffered an adverse employment decision because of his disability." *Sandefur v. Dart*, 979 F.3d 1145, 1151 (7th Cir. 2020). The Court addresses each prong in turn.

#### a. Disabled

The ADA was significantly amended "in 2008 to ensure that the ADA's 'definition of disability . . . be construed in favor of broad coverage.'" *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 888 (7th Cir. 2019) (alteration in original) (quoting 42 U.S.C. § 12102(4)(A)); *see also* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). "[W]hether or not a medical condition rises to the level of a disability is to be [decided] on an individualized case-by-case basis." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 938 (7th Cir. 2007). "[T]he term 'disability' means that an individual has: (1) a physical or mental impairment that substantially limits one or more 'major life activities'; (2) a record of such impairment; or (3) being regarded as having such an impairment." *Carothers v. Cnty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015)

(quoting 42 U.S.C. § 12102(1)). "[W]hether an impairment substantially limits a major life activity is 'not meant to be a demanding standard,' and 'shall be construed broadly in favor of expansive coverage.'" *Frazier-Hill v. Chi. Transit Auth.*, 75 F.4th 797, 803 (7th Cir. 2023) (quoting 29 C.F.R. § 1630.2(j)(1)(i)).

The ADA defines "major life activities" with an illustrative and non-exhaustive list, namely: "*caring for oneself*, performing manual tasks, seeing, hearing, *eating*, *sleeping*, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (emphasis added). Major life activities "also includes the operation of a major bodily function," such as "functions of the immune system" and "digestive, bowel, [and] bladder . . . functions." *Id.* § 12102(2)(B). The ADA instructs that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id.* § 12102(4)(D); *see Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1173 (7th Cir. 2013) (explaining that the relevant inquiry under the amended ADA is whether the alleged impairments "despite their short duration . . . substantially impaired a major life activity when they occurred").

Nache alleges that he "is disabled as a result of [UC], an incurable inflammatory bowel disease." FAC ¶ 18. He says his UC causes him symptoms like "severe abdominal pain, dehydration, fatigue, severe and rapid weight loss, diarrhea, blood in his stool, and scarring within the bile ducts," which affects major life activities like "his ability to care for himself, sleep, [and eat]," as well as the functioning of major bodily functions like his digestive system and immune system. *Id.* ¶¶ 19–20. This is sufficient—BNSF's citations to the contrary either support Nache, *see* Mem. Supp. Mot. Dismiss 5 (citing *Mack v. Chi. Transit Auth.* (*Mack IV*), No. 17 C 6908, 2020 WL 3414952, at *3 (N.D. Ill. June 22, 2020) (finding that the plaintiff's

reply-brief statement clarifying how her impairments substantially limited her major life activities was sufficient to conclude that her complaint plausibly alleged that she was disabled)),[2] or are outdated considering the authorities cited above, *see id.* (citing *Cassimy v. Bd. of Educ. of Rockford Pub. Schs., Dist. No. 205*, 461 F.3d 932, 937 (7th Cir. 2006) (finding that "isolated bouts" of depression did not constitute a disability under a prior iteration of the ADA)). Nache plausibly alleges that he is disabled.

### b. Qualified Individual

The ADA defines qualified individual as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Courts look to whether the plaintiff sufficiently alleges that he "(1) satisfies the requisite skill, experience, education, and other job-related requirements of his employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Budde v. Kane Cnty. Forest Pres.*, 597 F.3d 860, 862 (7th Cir. 2010) (citing 29 C.F.R. § 1630.2(m)); *see also Brumfield v. City of Chicago*, 735 F.3d 619, 632–33 (7th Cir. 2013) (clarifying the scope of the ADA's discrimination provisions as compared to its accommodation provisions). Ability to perform "essential functions of [the] job[] is examined as of the time of the adverse employment decision at issue." *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013).

Nache alleges that he is a qualified individual "because he is able to perform the essential functions of his job with or without accommodation," as evidenced by "his extensive work background in the track maintenance field and his experience at [BNSF]." FAC ¶ 21; *see also*

---

[2] BNSF purports to quote from *Mack v. Chicago Transit Authority* (*Mack V*), No. 17-cv-06908, 2020 WL 6545039 (N.D. Ill. Nov. 6, 2020), but the quoted language is from *Mack IV*. Compare *Mack IV*, 2020 WL 3414952, at *3, with Mem. Supp. Mot. Dismiss 5.

*id.* ¶ 14 (alleging that he was hired by BNSF on or around September 19, 2011); *id.* ¶ 16 (listing his alleged duties). BNSF says these allegations are conclusory and insufficient. Mem. Supp. Mot. Dismiss 5–7. Nache highlights that he was cleared by his doctors in March 2022 to return to work and points to the inference that he "was a qualified individual because he held the position for a significant period of time and was capable of performing the essential functions of the job, and indeed had done so for over a decade." Resp. Mot. Dismiss 7 (citing FAC ¶ 33).

Allegations that the plaintiff had prior experience in the at-issue position and that he held that position with the defendant-employer are sufficient to adequately plead qualification to perform the essential functions of the job. *See Gogos*, 737 F.3d at 1173; *Chi. Reg'l Council of Carpenters v. Thorne Assocs., Inc.*, 893 F. Supp. 2d 952, 962 (N.D. Ill. 2012). Nache's allegation that he received medical authorization to return to work without restrictions, FAC ¶ 33, further supports the plausibility of his status as a qualified individual at the time of his termination, *see Winkfield v. Chi. Transit Auth.*, 435 F. Supp. 3d 904, 909–10 (N.D. Ill. 2020). Contrary to BNSF's assertions, these allegations are not legal conclusions but "*factual* statement[s] concerning his physical capabilities at the time. And at the pleading stage, th[ese] fact[s] must be accepted as true." *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 763 (N.D. Ill. 2020). Nache plausibly alleges that he is a qualified individual.

### c. Causation

Finally, the ADA requires plausible allegations of a but-for causal connection between the adverse employment action and the plaintiff's disability. *See Brooks v. Avancez*, 39 F.4th 424, 440 & n.11 (7th Cir. 2022) (noting that the Seventh Circuit continues to require but-for causation despite the amended ADA's usage of "on the basis of" rather than "because of"). "At the pleading stage, a complaint need only identify 'the type of discrimination' that the plaintiff

believes occurred, 'by whom, . . . and when.'" *Beal v. Chi. Transit Auth.*, No. 23 CV 1387, 2023 WL 6461413, at *4 (N.D. Ill. Oct. 4, 2023) (alteration in original) (quoting *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015)); *see also Clark v. L. Off. of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017) ("The pleading requirement for employment-discrimination claims is minimal. A plaintiff need only identify the type of discrimination, when it occurred, and by whom."). BNSF does not meaningfully contest that its failure to return Nache to work could constitute an adverse employment action. *See* Mem. Supp. Mot. Dismiss 3 ("Nache arguably pleads an adverse employment action (BNSF failed to return him to work) . . . ."); *see also Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 972 (7th Cir. 2001) ("[T]he action must cause an adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or alteration of job responsibilities.").

Instead, BNSF argues that Nache fails to plausibly allege this causal link between his adverse employment actions and his UC, and that district courts routinely dismiss disability-discrimination claims which "allege only that the employer failed to return the plaintiff to work, without other factual content to connect the adverse employment action to the plaintiff's purported disability." Mem. Supp. Mot. Dismiss 7–8. BNSF makes three points in support: (1) because Nache alleges that he made BNSF aware of his UC when he was hired, the timing of his dismissal is not suspiciously related to his disability, Reply Mot. Dismiss 3; (2) Nache's allegations boil down solely to suspicious timing, *id.* at 3 & n.1; and (3) Nache's assertion that BNSF "terminated [his] employment based on his disability" is a mere legal conclusion which must be disregarded, *id.* at 3 (quoting FAC ¶ 47).[3]

---

[3] BNSF purports to quote FAC ¶ 15, but the quoted language comes from FAC ¶ 47. *Compare* Reply Mot. Dismiss 3, *with* FAC ¶ 47.

9

BNSF's causation arguments are premature at the motion to dismiss stage. The FAC alleges that "the timing of [the] forced resignation came at the end of his disability-related medical leave," FAC ¶ 38, that BNSF wanted him "to resign so it could avoid accommodating [him]," *id.* ¶ 39, and that BNSF terminated his "employment based on his disability," *id.* ¶ 47. Nache identifies the what, who, and when—in other words, he identifies all that is required at this stage. *See Beal*, 2023 WL 6461413, at *4. These allegations are not mere legal conclusions and are sufficient to plausibly allege causation. *See Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) (per curiam) (vacating dismissal of complaint for failure to state a claim because the plaintiff's allegations that, *inter alia*, the employer fired him "'due to' his alcoholism and his request to accommodate his condition" were sufficient to "state claims for disability discrimination and retaliation"); *Nash v. Advoc. Aurora Health, Inc.*, No. 23 C 1474, 2023 WL 8718120, at *3 (N.D. Ill. Dec. 18, 2023); *Etheridge v. Hudson Grp. Retail, LLC*, No. 20-cv-7204, 2022 WL 375556, at *6 (N.D. Ill. Feb. 8, 2022); *Kelley v. Chi. Transit Auth.*, No. 20-CV-02881, 2021 WL 698482, at *4 (N.D. Ill. Feb. 23, 2021).

BNSF's cited cases are unavailing. Unlike the plaintiff in *Penny v. Lincoln's Challenge Academy*, No. 17-cv-2232, 2018 WL 11463009, at *4 (C.D. Ill. Aug. 20, 2018), Nache does not allege that he was terminated because of his advocacy on behalf of other people with disabilities. Nor is this a case where Nache failed to "allege any facts to support the inference that he was terminated not because of his extended leaves of absence but because of his (unidentified) disability." *See Lee v. Chi. Transit Auth.*, No. 12-cv-09180, 2016 WL 6680483, at *5 (N.D. Ill. Nov. 14, 2016), *aff'd*, 696 F. App'x 752 (7th Cir. 2017); *Smajlovic v. Ann & Robert H. Lurie Child.'s Hosp. of Chi.*, No. 15-cv-01243, 2016 WL 3595734, at *4 (N.D. Ill. July 5, 2016); *cf. Abdul-Aziz v. Show Dep't, Inc.*, No. 09-cv-7609, 2010 WL 3516157, at *3 (N.D. Ill. Aug. 25,

10

2010) ("[The p]laintiff does not allege that he was refused an open position *because of* his alleged arm injury. Thus, his allegations are insufficient with regard[s] to [causation]."). Nache alleges those necessary facts—he needed time off due to his disability, took that time off, was refused a return-to-work date, and was asked to resign "based on" his disability. FAC ¶¶ 28–29, 33–36, 47. Nache adequately pleads the necessary causal link, and the Court rejects BNSF's arguments for dismissing Count I.

### 2. Count II: ADA Failure to Accommodate

Claims under the ADA for failure to accommodate require the plaintiff to plausibly allege that "(1) [the] plaintiff was a qualified individual with a disability; (2) [the] defendant was aware of his disability; and (3) [the] defendant failed to accommodate his disability reasonably." *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019); *see also Brumfield*, 735 F.3d at 632 ("[A]n employer's accommodation duty is triggered only in situations where an individual who is qualified on paper requires an accommodation in order to be able to perform the essential functions of the job."). The Court's discussion above shows that Nache has plausibly alleged that he was disabled, qualified,[4] and that BNSF was aware of his disability. *See supra* Section II.B.1.

The parties' dispute focuses on the third element—whether BNSF denied Nache a reasonable accommodation. The parties do not discuss whether Nache's request for FMLA leave is even rightly considered a request for an accommodation under the ADA. *See Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017) (rejecting the argument that "employees are entitled to extended time off as a reasonable accommodation" as an "untenable interpretation of the term 'reasonable accommodation'" which would "transform[ the ADA] into

---

[4] BNSF argues that Nache is not disabled nor a qualified individual for purposes of his failure-to-accommodate claim as well but relies solely upon arguments which the Court rejected above. *See* Mem. Supp. Mot. Dismiss 9.

a medical-leave statute"). Yet the Seventh Circuit has recognized that "[i]ntermittent time off or a short leave of absence—say, a couple of days or even a couple of weeks—may, in appropriate circumstances," be a reasonable accommodation under the ADA, *id.* at 481, and that "[t]ime off may be an apt accommodation for intermittent conditions," like UC, *id.* (alteration in original) (quoting *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003)). The parties do not contest whether Nache's requested continuation of FMLA leave was for a reasonably short period, so the Court assumes that it was.

Instead, BNSF argues that Nache cannot sustain his claim because Naches alleges that BNSF "provided [him] with the very accommodation he sought," which was FMLA leave to deal with his disability-induced condition. Mem. Supp. Mot. Dismiss 9–10; *see also* Reply Mot. Dismiss 2 ("Nache's factual allegations confirm BNSF did not deny Nache any disability accommodation . . . ."). Nache says that BNSF "confuses" the FAC's allegations and that he instead alleges that "while [BNSF] initially accommodated [Nache]'s disability, [it] discontinued his accommodation and opted to terminate his employment rather than provide him with additional medical leave." Resp. Mot. Dismiss 12. The interpretive issue is what he means by "additional medical leave": does he means that his accommodation of FMLA leave was "discontinued" by BNSF when it ignored or denied his February request for FMLA leave,[5] or does he mean that he asked in April for FMLA leave beyond April 1, 2022?

---

[5] The FAC does not specify when Nache asked for additional FMLA leave to accommodate his scheduled medical procedure, nor when he contracted COVID-19 and thus knew that the procedure would need to be rescheduled, nor when Nache told Williams of this rescheduling. *See* FAC ¶¶ 28–29, 31–32. The Court infers that the request for more FMLA leave to accommodate the procedure was made in or around February 2022, because that procedure was ultimately conducted on or around February 24, 2022. *Id.* ¶ 31. The Court refers to this request as the February request to distinguish it from his initial request for FMLA leave in January 2022. *See id.* ¶¶ 24–26 (alleging that Nache told BNSF of his "severe and life threatening condition" on or around January 1, 2022, and was placed on intermittent FMLA leave from "on or around January 7, 2022 through January 24, 2022").

12

The Court is obliged to "draw all inferences in the light most favorable" to Nache. *See Vesely*, 762 F.3d at 664. Nache's loose language when referring to medical leave,[6] as well as his fuzzy timeline, complicates this task. One could read Nache's allegations as stating that his February request for continued FMLA leave was granted and that he subsequently requested more FMLA leave in April, after already exhausting his full allotment of twelve weeks of FMLA leave. *See Trahanas v. Nw. Univ.*, 64 F.4th 842, 855 (7th Cir. 2023) ("The FMLA requires certain employers to provide their employees with up to 12 weeks of unpaid leave each year for qualifying health conditions."). This reading could be supported by Nache's discussion of his termination—he alleges that Williams asked him to resign "on or around April 1, 2022," and that he was terminated "while he was on leave." FAC ¶¶ 36, 41. The Seventh Circuit uses "an unequivocal notice of termination test to determine the date that an employee has been terminated." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014) (quotation marks omitted). "First, there must be a final, ultimate, nontentative decision to terminate the employee. . . . Second, the employer must give the employee 'unequivocal' notice of its final termination decision." *Id.* (alteration in original) (quotation marks omitted). If BNSF denied his February request and his FMLA leave ended on January 24, 2022, then he could not have been terminated while on FMLA leave, as he alleges that he was not asked to resign until on or around April 1, 2022. *See* FAC ¶ 36.

However, the Court concludes that Nache's references to being terminated while on leave refer to an unwanted absence, not FMLA leave. *E.g.*, *id.* ¶ 41. This harmonizes his allegations

---

[6] The FAC uses different terms for medical leave, and it is unclear whether Nache intended those different terms to have different meanings. *See* FAC ¶ 26 ("intermittent FMLA leave"); *id.* ¶ 27 ("FMLA leave as a result of a disability-related medical episode"); *id.* ¶ 29 ("FMLA leave"); *id.* ¶ 30 ("continued medical leave as a result of disability-related medical concerns"); *id.* ¶ 32 ("disability-related FMLA leave"); *id.* ¶ 38 ("disability-related medical leave").

13

that his February request for more FMLA leave was denied but that he was also terminated while on "forced" leave on or around April 1, 2022. *See* Resp. Mot. Dismiss 14 (citing FAC ¶¶ 36–38) (stating that BNSF "attempted to force [Nache] to resign, with the timing of this push for resignation coming at the conclusion of [his] (*now forced*) medical leave" (emphasis added)).

The Court does not agree with BNSF's assertion that Nache alleges that his February request for more FMLA leave was granted. He alleges that he was placed "on intermittent FMLA leave beginning on or around January 7, 2022 through January 24, 2022." FAC ¶ 26. In or around February, he requested an accommodation of continuing his FMLA leave due to his upcoming medical procedure. *Id.* ¶¶ 28–29, 57. His EEOC charge states that BNSF ignored the February request. *See* Charge of Discrimination (alleging that Nache requested "a reasonable accommodation of continuing [his] FMLA leave until [his] procedure was completed," but BNSF "ignored [his] requests for reasonable accommodations"). Further, he alleges that BNSF "failed to engage in the interactive process to determine the appropriate accommodations after [Nache] requested [a] continued reasonable accommodation in the form of additional medical leave in order to have a disability-related surgery." FAC ¶ 57. Reading the FAC to say that Nache complains of the denial of leave on or around April 1, 2022—a point at which Nache was seeking to return to work—is unsupportable when viewing the complaint as a whole, which places this request in the context of his February procedure. *See id.* ¶¶ 28–32. Nache alleges that BNSF "interfered with [his] rights under the FMLA when they denied [him] utilization of his FMLA rights," and that when he "requested additional FMLA leave per his rights, [BNSF] unlawfully denied [his] request and opted to terminate his employment instead." *Id.* ¶¶ 75–76. All these allegations tell a consistent story—Nache asked for more FMLA leave in February as an accommodation for his disability, but BNSF ignored or denied that request, and that was a

14

denial of a reasonable accommodation. The conclusion that BNSF granted his February request for more FMLA leave cannot be squared with Nache's other allegations.

These conclusions are also consistent with Nache's allegation that he "kept [BNSF] informed and was in contact with Ms. Williams throughout the duration of his disability-related FMLA leave." *Id.* ¶ 32. Contrary to BNSF's assertions otherwise, this allegation does not mean that Nache must have been on FMLA leave when he told BNSF that he was cleared to work in or around March 2022. Reply Mot. Dismiss 2. In addition to staying in touch with BNSF during January 7, 2022, to January 24, 2022—his period of intermittent FMLA leave—he informed BNSF of test-results which he learned of in March 2022, outside that period of FMLA leave but within his period of forced absence. FAC ¶¶ 32–34. Allegations that one stayed in touch during one period do not require that no other communications occurred outside that period. Count II plausibly alleges that Nache was denied a reasonable accommodation.[7]

### 3. Count III: ADA Retaliation

A retaliation claim under the ADA has three elements: "(1) [the plaintiff] engaged in protected activity, (2) [the] employer took an adverse action against [the plaintiff], and (3) there was a 'but for' causal connection between the two." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (quotation marks omitted). The requirement of statutorily protected activity requires that the plaintiff "have asserted his rights under the ADA by either seeking an accommodation or raising a claim of discrimination due to his disability." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814–15 (7th Cir. 2015). "[A]n employer's

---

[7] The ADA requires employers to engage in an interactive process to identify reasonable accommodations. *See Spurling*, 739 F.3d at 1061. BNSF argues that Count II's invocation of the interactive process is "nonsensical" because Nache did not require any other accommodations after April 1, 2022. Mem. Supp. Mot. Dismiss 10. Nache alleges that the interactive process broke down in February, not April, so this argument cannot be the basis for dismissing Count II. Similar reasoning applies to BNSF's arguments regarding the failure of the interactive process in the context of Count III, the ADA-retaliation claim. *See id.*

action is adverse if the action would have dissuaded a reasonable worker from engaging in protected activity," assessed objectively "based on how a reasonable employee might react in the plaintiff's circumstances." *Trahanas*, 64 F.4th at 856 (quotation marks omitted). Termination counts as an adverse action. *Id.* Refusing to allow an employee to return to work counts as an adverse action as well. *Elzeftawy*, 477 F. Supp. 3d at 766.

Nache alleges that he was engaged in statutorily protected activity when he requested an accommodation for his disability and that BNSF failed to engage in the interactive process and instead terminated him. FAC ¶¶ 64, 66. BNSF advances two primary arguments to dismiss Count III: (1) the retaliation claim is an impermissibly repackaged version of Count II, the failure-to-accommodate claim; and (2) Nache insufficiently alleges but-for causation between his protected activity and adverse employment actions. Mem. Supp. Mot. Dismiss 10–12. Nache responds that BNSF does not dispute that he engaged in protected activity, and argues that BNSF subjected him "to more than just termination," as BNSF "attempted to forcibly prolong [his] leave when he stated he was ready to return," and "after noticing [his] persistence to return to work, attempted to force him to resign, with the timing of this push for resignation coming at the conclusion of [his] (now forced) medical leave." Resp. Mot. Dismiss 13–14.

Nache engaged in protected activity when he requested an accommodation for his disability. *See Preddie*, 799 F.3d at 814–15. BNSF also subjected Nache to adverse employment actions when it terminated him, *see Trahanas*, 64 F.4th at 856, and when it refused to give him a return-to-work date, *see Elzeftawy*, 477 F. Supp. 3d at 766 ("[T]here is no question that refusing to allow a disabled employee to return to work . . . is the type of conduct that would dissuade a reasonable worker from requesting accommodations in the future, or from engaging in other protected activity under the ADA."). While the FAC does not explicitly refer to the delay

16

in return to work as an adverse employment action, Nache's clarification in his response to that effect is not inconsistent with the FAC's allegations.  *See* Resp. Mot. Dismiss 14; *Mack IV*, 2020 WL 3414952, at *3.  BNSF's citations for its repackaging argument are distinguishable as those cases decided that the denial of one's accommodation request could not also constitute an adverse employment action for purposes of a retaliation claim.  *See* Mem. Supp. Mot. Dismis 10–11 (citing *Crawford v. Dekalb Cmty. Unit Sch. Dist. No. 428*, No. 3:22-cv-50256, 2023 WL 2429233, at *4 (N.D. Ill. Mar. 9, 2023); *Santos-Means v. Sheriff's Off. of Cook Cnty.*, No. 12 CV 8804, 2016 WL 6092600, at *8 (N.D. Ill. Oct. 19, 2016); *Moore-Fotso v. Bd. of Educ. of the City of Chi.*, 211 F. Supp. 3d 1012, 1037–38 (N.D. Ill. 2016)).  Here, Nache is not relying on the denial of his requested accommodation as the necessary adverse employment action, so the Court rejects BNSF's argument that Count III must be dismissed as an impermissibly repackaged failure-to-accommodate claim.

The only other issue is causation, and the pleading stage does not require much to plausibly allege causation for a retaliation claim.  "Courts therefore often deny motions to dismiss where the plaintiff alleges protected activity that is followed by an adverse employment action."  *Harris v. Martinez*, No. 22-cv-00373, 2023 WL 3504930, at *7 (N.D. Ill. May 17, 2023); *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013) ("To plead a retaliation claim under Title VII, a plaintiff must allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity . . . .").[8]  Nache requested an accommodation around February 2022, was denied a return to work in March 2022—despite being medically cleared to return—and was terminated on or around

---

[8] "The retaliation provisions of the . . . principal federal employment discrimination statutes," including those for disability, race, sex, age, and rehabilitation "are materially identical." *Twisdale v. Snow*, 325 F.3d 950, 952 (7th Cir. 2003).  Therefore, Title VII decisions are instructive for Nache's ADA-retaliation claim.

17

April 1, 2022.  FAC ¶¶ 29, 33–36.  That is enough to plausibly allege a retaliation claim under the ADA.  *See Luevano*, 722 F.3d at 1029; *Martinez*, 2023 WL 3504930, at *7.

BNSF's primary citation for its insufficient causation argument is also distinguishable.  *See Monroe v. Jewel Food Stores, Inc.*, No. 18-cv-1499, 2021 WL 534662, at *5–6 (N.D. Ill. Feb. 12, 2021).  There, the plaintiff filed an EEOC charge on August 9, 2017, complaining that an agent of his employer told him "that he was not allowed to return to work unless he was 100% restriction free, meaning free of all medical restrictions."  *Id.* at *1 & n.2 (quotation marks omitted).  After a lengthy and apparently fruitless back-and-forth concerning the employer's release form for authorizing the employer to speak with the employee's physician, the employer told the employee that he could return to work, but his work assignment was further delayed for unspecified reasons.  *Id.* at *2.  The court found that employee's "conclusory allegation that [the employer] did not allow [the employee] to return to work for 8 weeks because he complained about the 100% statement," was insufficient to allege a causal link between the adverse employment action—a delay in return-to-work—and statutorily protected activity.  *Id.* at *6.  Here, the delay in Nache's return to work is not plausibly attributable to his unwillingness to use standardized procedures or any other action or inaction on his part.  Further, he never received a return-to-work date and was ultimately terminated, unlike the employee in *Monroe*.  *See id.* at *2.  *Monroe* is distinguishable and the Court rejects BNSF's arguments for dismissing Count III.

4. **Count IV: FMLA Interference with and Denial of Rights**

A plaintiff must plausibly allege five elements to sustain an FMLA interference claim: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled."  *Soulemane v.*

*Tyson Fresh Meats, Inc.*, No. 4:21-cv-04066-SLD-JEH, 2022 WL 263560, at *2 (C.D. Ill. Jan. 27, 2022) (quoting *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (stating this standard in context of summary judgment))). BNSF focuses solely on the fifth element, again arguing that Nache alleges that BNSF did not deny his February request for additional FMLA leave. Mem. Supp. Mot. Dismiss 12–13. The Court again rejects BNSF's argument that Nache alleges that BNSF granted his February request for additional FMLA leave, and therefore rejects BNSF's effort to dismiss Count IV.

## CONCLUSION

For the foregoing reasons, BNSF Railway Company's 12(b)(6) Motion to Dismiss Counts I, II, III & IV of Plaintiff's First Amended Complaint, ECF No. 14, is DENIED. BNSF's Motion for Leave to File Its Reply in Support of Its 12(b)(6) Motion to Dismiss Counts I, II, III & IV of Plaintiff's First Amended Complaint, ECF No. 18, is GRANTED. The Clerk is directed to docket BNSF's Reply, ECF No. 18-1.

Entered this 5th day of March, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE